The document below is hereby signed.

Signed: November 9, 2017



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| QUIVUS SYSTEMS, LLC, | ) | Case No. 17-00119 |
| | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION SUPPLEMENTING
COURT'S ORAL DECISION REGARDING PROPOSED SALE

This supplements the court's oral decision regarding the motion of Bryan Ross, the chapter 7 trustee, to sell the claims of the debtor, Quivus Systems, LLC ("Quivus Systems"), against John Harrison, Quivus Holdings, LLC, and Gazuntite, LLC, to Soroof International, Inc. ("Soroof"), the majority shareholder of the debtor. For ease of discussion, I refer to the three entities against which the debtor holds claims collectively as "the defendants" because, prior to commencing this bankruptcy case, the debtor had begun pursuing those claims against those entities in a civil action still pending in the Superior Court of the District of Columbia, *Soroof International, Inc., et al. v. Quivus Holdings, LLC*, *et al.*, Case No. 2015 CA 004994 B.

I

One of the arguments raised by the defendants in opposition to the sale is that when a sale "will benefit an insider entity that *controls* the debtor, 'the court must carefully consider whether it is also appropriate to defer to their business judgment.'"  Dkt. No. 34, at 10 (quoting *In re Flour City Bagels, LLC*, 557 B.R. 53, 78 (Bankr. W.D.N.Y. 2016) (quoting *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 424 (Bankr. S.D. Tex. 2009))).  In addition, the defendants argue that the sale should not be allowed because the estate has claims against Soroof.  *Id.* at 11-13.

The insider status of Soroof is not a basis to disapprove the sale.  *In re Flour City Bagels, LLC*, the case to which the defendants refer in their opposition to Ross's motion, is distinguishable because it involved a sale of claims that belonged to a debtor in possession to the insider company that controlled that debtor in possession and was a sale proposed by those two entities, who were represented by the same counsel both at the auction held and in the drafting of the sale motion and asset purchase agreements.  Here, in contrast, although Soroof controls the debtor and the proposal is to sell the debtor's claims against the defendants to Soroof, neither the debtor nor Soroof is the entity proposing the sale.  The sale has been proposed by Ross, the chapter 7 trustee, who is not controlled by

Soroof.  In proposing the sale, Ross has proceeded in good faith, and in the sound exercise of his business judgment as trustee.

The bankruptcy estate has insufficient liquid assets at this juncture to hire an attorney to pursue the claims on an hourly fee basis.  Ross's attorney, Janet Nesse, an experienced litigator, has declined to pursue the debtor's claims against the defendants on a contingency fee basis.  Although, as the defendants argue, the evidence suggests that the debtor may have claims against Soroof that became property of the estate when the debtor filed its chapter 7 petition, the debtor scheduled no such claims and contends that no such claims are owed.  It is entirely speculative that the trustee would make any recovery on the alleged claims against Soroof, and even if such a recovery were possible, it likely would take some time before anything would be recovered.  If Ross were to delay selling the debtor's claims against the defendants in a speculative hope that he could recover on the alleged claims against Soroof, the viability of the debtor's claims against the defendants could suffer as time elapses without an attorney representing the trustee in the Superior Court.

When Ross broached with Nesse, his attorney, the possibility of offering to sell the claims to Soroof now as the only apparent prudent way of realizing something on the claims against the defendants, Nesse advised him that this was an appropriate course

in the circumstances.  Ross exercised sound business judgment as the trustee in deciding to attempt to sell the claims against the defendants now instead of postponing such an attempt until after pursuing any claims against Soroof.  The defendants have declined to make an offer to Ross to settle the claims against them on terms that would be superior to what would be achieved via the sale of the claims to Soroof.

 Therefore, because Ross's decision to sell the debtor's claims to Soroof was not influenced by Soroof's insider status, but rather stems from Ross's sound business judgment in regards to the best interest of interested parties in these bankruptcy proceedings, Soroof's status as the controlling shareholder of the debtor is not a basis for disapproving the sale.  For the same reason, and because any potential claims the debtor holds against Soroof are *not* being relinquished pursuant to the sale, the debtor's potential claims against Soroof are similarly not a basis for disapproving the sale.

II

 The sale agreement is not invalid on the basis of champerty, another argument raised by the defendants in their opposition to the trustee's motion.  Under 28 U.S.C. § 959(b), a trustee must "manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the

owner . . . thereof would be bound to do if in possession thereof." I will assume, without deciding, that under 28 U.S.C. § 959(b) champerty may apply to a trustee's sale of an asset even in a liquidating case such as this.[1]

Champerty is an ancient common law doctrine which Black's Law Dictionary defines as "[a]n agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds[.]" *Black's Law Dictionary* 279 (10th ed. 2014). In other words, a champertous agreement is one in which a stranger to a lawsuit agrees with a party to the lawsuit to pursue the party's litigation at the stranger's own cost in return for a portion of the proceeds of

---

[1] A liquidation, as pursued in this chapter 7 case, arguably is not subject to 11 U.S.C. § 959(b). *Compare*, *e.g.*, *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 334 (7th Cir. 2010) (citations omitted) ("Modern courts have . . . concluded that § 959(b) does not apply to liquidations."), *with*, *e.g.*, *Lancaster v. Tennessee (In re Wall Tube & Metal Products Co.)*, 831 F.2d 118, 122 (6th Cir. 1987) ("[T]hat the trustee in this case is liquidating the estate rather than reorganizing it is inconsequential, especially in the critical context of the public's welfare."). I note that it might seem odd to view merely selling an asset of the estate, such as a cause of action, to a single purchaser, as managing or operating that asset within the meaning of § 959(b). In contrast, if a trustee were arranging for a syndication of a cause of action, it might not seem odd to view the arrangement as managing and operating the cause of action. *See Johnson v. Van Wyck*, 4 App. D.C. 294, 319-23, 1894 WL 12005, at *14-16 (D.C. Cir. Nov. 5, 1894) (dealing with a syndicate, organized to raise money to maintain claims of heirs of a decedent to recover real estate the decedent had owned, and formed by the issuance of 240 stock certificates to share in the recoveries).

any judgment won. There are three essential elements of common law champerty:

> (1) the . . . fee [of the person who would seek to enforce the allegedly champertous agreement] must come from the recovery in a successful lawsuit; (2) [that person] must have no independent claim to the recovery fund; and (3) the costs and expenses must be borne by [that person] with no expectation of reimbursement from the [other party to the allegedly champertous agreement].

*Papageorge v. Banks*, 81 A.3d 311, 318 (D.C. 2013) (quoting *Marshall v. Bickel*, 445 A.2d 606, 609 (D.C. 1982)). An agreement meeting these three elements is termed "champertous" and deemed unenforceable. Here, Soroof is to be entitled to receive 95% of the proceeds of the claims it is purchasing, and treating that as a "fee," it appears that if the other two elements are met, the transaction meets the definition of champerty.[2] However, for the reasons that follow, the sale proposed by the chapter 7 trustee in this case is not barred by the doctrine of champerty.

### A.

There are two notable and related features of this sale that may bear on the issue of champerty: (1) the litigation of

---

[2] Had the trustee proposed to sell the claims to Soroof for a flat dollar amount with Soroof to be entitled to all proceeds of the claims, Soroof arguably would not be receiving a fee. I need not address whether the champerty doctrine (or some other rule of law) may nevertheless apply to bar even a complete assignment of a cause of action, that is, a sale in which the purchaser of claims from a bankruptcy trustee has the right to receive all of the proceeds of the litigation.

the debtor's claims had already begun before the debtor filed a bankruptcy petition and before the trustee sought to sell those claims, and (2) the trustee is motivated to sell the debtor's claims in a good faith attempt to carry out his statutory obligations in the best interest of interested parties.

The trustee is only seeking to sell the debtor's claims for a justifiable reason: the trustee simply lacks sufficient estate resources at this juncture to continue the litigation of the debtor's pending claims. The Court of Appeals clarified the doctrine of champerty in *Johnson v. Van Wyck*, 4 App. D.C. 294, 319-20, 1894 WL 12005, at *14 (D.C. Cir. Nov. 5, 1894):

> Unnecessary and speculative litigation, the promotion of inexcusable strife, the vexation of landholders and the laying of embargoes on the free alienation of their holdings, are as pernicious now as they ever were and as needful of redress. Contracts which tend to promote these evils are as much opposed to sound public policy as they ever were, and therefore ought not to be enforced. The distinction between contracts in aid of litigation which ought to be enforced and those which ought not, is well drawn in the case of *Brown v. Bigne*, 21 Ore. 260. This was a suit on a contract made between Bigne, who was engaged in a necessary and meritorious suit and had no means with which to further prosecute it, and Brown, who furnished the necessary funds upon Bigne's agreement to give him one-half the proceeds. The court found that the contract was fairly and freely made, and had been performed by Brown in good faith, and upheld it as untainted by champerty, but at the same time said: "When such contracts are made for the purpose of stirring up strife and litigation, harassing others, inducing suits to be begun which otherwise would not be, or for speculation, they come within the analogy and principles of that doctrine, and should not be enforced."

In *Brown v. Bigne*, 28 P. 11 (Or. 1891), a plaintiff engaged in a necessary and meritorious suit had no means with which to further prosecute it, and champerty did not exist when the plaintiff sold a percentage of the cause of action to a lay person (a non-lawyer) who agreed to fund the litigation.  In other words, a non-lawyer's financing of litigation in exchange for a share of the proceeds of the litigation would not be champertous if made in good faith and not for an improper purpose. However, the arrangement in *Johnson v. Van Wyck,*[3] in contrast, *was* found to be champertous as for an improper purpose, and thus that court's endorsement of the Supreme Court of Oregon's holding in *Brown v. Bigne* was only dicta.

    Here, as in *Brown v. Bigne*, the sale agreement was not made for the purpose of speculating, stirring up strife and litigation, harassing others, or inducing the commencement of suits which otherwise would not be commenced.  The litigation of the claims the trustee wishes to assign to Soroof has already begun and Soroof is already a co-plaintiff to the debtor in the litigation.  The trustee is selling the debtor's Superior Court

---

[3] 4 App. D.C. 294, 1894 WL 12005 (D.C. Cir. Nov. 5, 1894). In the case of *Johnson v. Van Wyck*, an individual, Lorin Blodget, purchased a 50% share of claims of heirs of a decedent who sought to recover real estate the decedent had owned. *Id*. at 295, *1. He then organized a syndicate to raise money to maintain the pursuit of the claims by issuing 240 stock certificates to share in the recoveries. *Id*. at 307-08, *7.  The transaction was viewed as champertous as a sale of the claims for speculation. *Id.* at 322-23, *16.

Case 17-00119    Doc 43    Filed 11/09/17    Entered 11/09/17 16:58:35    Desc Main
                          Document      Page 9 of 14

litigation claims because the estate is unable to fund the litigation and Soroof, the other plaintiff in the debtor's litigation, is buying the claims (with the trustee to receive five percent of any recovery) in good faith to continue litigation it deems meritorious.

Moreover, under 11 U.S.C. § 704(a)(1), a trustee must "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]"  The trustee therefore has a statutory imperative to attempt to sell a cause of action if that manner of reducing it to money is consistent with the best interests of parties in interest, including the creditors of the estate and existing or potential administrative claimants.  A trustee's sale of a cause of action in such circumstances is not an instance of stirring up unnecessary and speculative litigation (the vice against which champerty is directed).  Rather, it is a necessary step in complying with the trustee's statutory obligations.  For all of these reasons, the sale proposed by the chapter 7 trustee in this case, made in good faith by Ross in performance of his statutory duties as trustee and not for an improper purpose, is not champertous under the holding in *Brown v. Bigne*, an Oregon decision endorsed in dicta by the Court of

9

Appeals in *Johnson v. Van Wyck* in addressing champerty under District of Columbia law.

However, it is not entirely clear that the dicta contained in *Johnson v. Van Wyck* that endorses the holding in *Brown v. Bigne* is controlling here and the court must exercise caution in relying on such dicta.  The question of whether the proposed sale is champertous is essential because generally "[i]f a contract is determined to be champertous, District of Columbia courts will not enforce it . . . ."  *Marshall v. Bickel*, 445 A.2d 606, 609 (D.C. 1982).  *See also Papageorge v. Banks,* 81 A.3d at 318.  Unless Soroof could be said to have an independent claim to the recovery fund, the terms of the sale here appear to meet the three-pronged definition of champerty set forth in *Marshall v. Bickel*, 445 A.2d at 609.  Moreover, it is not clear whether District of Columbia law regarding champerty would recognize an exception to the champerty doctrine when a trustee, in complying with the mandate of 11 U.S.C. § 704(a)(1), sells a cause of action on terms that meet the definition of champerty.  As discussed next, because this case involves an exception to the champerty doctrine, it is unnecessary to determine whether the dicta in *Johnson v. Van Wyck*, endorsing the Supreme Court of Oregon's holding in *Brown v. Bickel*, has any vitality in a case governed by District of Columbia law, and whether a sale under 11 U.S.C. § 704(a)(1) would be excepted from champerty.

B.

A clearer and more certain route exists for concluding that the sale is not champertous.  The Court of Appeals stated in *Papageorge v. Banks,* 81 A.3d at 318, that "'a person who is financially interested in the enforcement of a right of action belonging wholly or partly to another may lawfully undertake to pay the expenses of litigation and to share in the recovery.'" *Id.* (quoting 7 Samuel Williston & Richard A. Lord, *Williston on Contracts* § 15:4 (4th ed. 2010) (citing *Restatement (First) of Contracts*, § 543 (1932))).  Such a person may do so because he or she would not be deemed "officious."  Thus, "where . . . a party either has, or honestly believes he has, an interest either in the subject-matter of the litigation or in the question to be determined, he . . . may, in order to strengthen his position, purchase the interest of another party in addition to his own."  *Id.* (quoting *Smith v. Hartsell*, 63 S.E. 172, 175 (N.C. 1908) (citation omitted)).

Applying that observation by the Court of Appeals, the sale agreement here is not champertous because Soroof is not an "officious intermeddler."  The sale agreement between the chapter 7 trustee and Soroof deals with the debtor's claims in the District of Columbia Superior Court case of *Soroof International, Inc., et al. v. Quivus Holdings, LLC*, *et al.*, Case No. 2015 CA 004994 B.  In that case, both Soroof and Quivus

11

Systems are plaintiffs.  The plaintiffs assert claims of breach of fiduciary duty and other related causes of action against John Harrison, Quivus Holdings, LLC, and Gazuntite, LLC.  In turn, in the same case, John Harrison and Quivus Holdings, LLC, assert claims against Soroof.  Soroof has an interest in the Superior Court case and the questions to be determined therein and, in an attempt to strengthen its position and gain more control over the Superior Court case, Soroof has agreed with the trustee to purchase the debtor's interest in the litigation thereby becoming the owner of that interest in addition to its own.  As the District of Columbia Court Appeals affirmed in *Papageorge v. Banks*, such an agreement is not void as champertous.

As an alternative basis for holding that, under *Papageorge v. Banks*, the sale is not void, Soroof, as a creditor of the estate and a holder of a majority interest in the debtor, has a financial interest in the debtor's claims succeeding, so the sale at issue is not the type of sale that the doctrine of champerty is intended to prevent.  As a creditor of the estate, Soroof potentially could benefit from the successful prosecution of the debtor's claims against the defendants and any resulting recovery collected by the estate.  Also, as the holder of an equity interest in the debtor, Soroof could benefit from the successful prosecution of the debtor's claims because if the

trustee is able to pay all administrative claimants and creditors in full and then make a distribution to the debtor the value of its interest in the debtor would be enhanced.  For these reasons, Soroof is financially interested in the continued litigation of the claims against the defendants that belong to the debtor's bankruptcy estate.  Thus, under *Papageorge v. Banks*, the trustee's sale of the debtor's claims to Soroof is not void under the doctrine of champerty.

III

Harrison asserts that the debtor is evading its contractual obligation to advance to Harrison attorney's fees and expenses he has incurred or will incur in defending against the debtor's claims against him.  The debtor (and the debtor's bankruptcy estate) remain liable on the advancement obligation.  The difficulty is that the debtor's assets are now property of a bankruptcy estate, and Harrison is a creditor of the estate insofar as any advancement obligation owed to him is concerned. Unfortunately for him, like the payment of any other creditor's claim, the payment of the advancement obligation owed to Harrison must await the trustee's administration of the estate and the trustee's filing of a final report with a proposed distribution to creditors of the proceeds of the estate.

Harrison contends that the advancement obligation will pass to Soroof as the purchaser of the debtor's claims against him.

He argues that, pursuant to 8 Del. Gen. Corp. L. § 145(e), (h), when a company that is obligated to pay advancement is purchased by another company, the right to advancement can be enforced against the new company. *See* Dkt. No. 34, at ¶¶ 31-32. That statutory provision does not appear to apply to the sale of the claims to Soroof, and, in any event, the issue of whether it applies is irrelevant as to whether the court should approve the sale.

IV

An order follows approving the sale.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings; Office of the United States Trustee.